NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 21-3086

———————

UNITED STATES OF AMERICA

v.

KESHI IVES,

Appellant

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-20-cr-00285-001)
District Judge:  Honorable Christopher C. Conner

———————

Submitted under Third Circuit LAR 34.1(a)
on January 12, 2023

Before: JORDAN, PHIPPS and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 14, 2023)

———————

OPINION[*]

———————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

A jury found Keshi Ives guilty of attempted possession with the intent to distribute a controlled substance containing cocaine. Ives appeals the District Court's denial of his motion for judgment of acquittal. We will affirm.

## I.

Ives was charged with attempting to possess with intent to distribute five hundred grams or more of cocaine hydrochloride under 21 U.S.C. §§ 841, 846. At trial, the government presented the following evidence: A package addressed to Melrose Paul was delivered to the residence of Ives's girlfriend. No one by this name lived at her residence and the return address was fake. Using a fake recipient name and return address are typical methods for transmitting controlled substances through the mail.

When Ives's girlfriend did not recognize the addressee's name, she had it returned to sender. On return, the post office considered the package suspicious and alerted a postal inspector. About a kilogram of cocaine was inside the package. Meanwhile, the post office received two redelivery requests with Ives's name and his girlfriend's address entered as the customer information. The first request was for customer pick-up. The second was for delivery to the residence of Ives's girlfriend. Both requests came from the phone number of Ives's cousin, Dwayne Carey, who was a known drug dealer.

After Carey learned that the package was returned to the post office, he cursed and explained that they "got until the 29th."[1] Using text messaging, Ives and Carey coordinated

---

[1] Appx. 198.

a plan to retrieve the package. Phone records show that they made almost fifty phone calls to each other in the week following the missed delivery, significantly more than the month before.

Ives later texted his girlfriend, explaining that the package was being redelivered and that she should not refuse it. His girlfriend responded that this "seemed shady" and told him to send the package to his mother's house.[2] Instead, Ives decided to retrieve it from the post office himself.

Ives went to the post office, seeking to retrieve the package. The post office alerted a postal inspector, who then coordinated with state police to set up a controlled buy operation. As part of this operation, the postal inspector called Ives to coordinate the package's retrieval. During this call, Ives stated that the package was something he had bought from Arizona. When Ives arrived at the post office, undercover officers observed him engaging in several counter-surveillance techniques before retrieving the package. After he had possession of the package, he realized that law enforcement officers were moving in. He tried to flee. Ives was then arrested.

Upon a search of Ives's house, agents found a note in a crockpot about receiving a package under the name Melrose Paul. Ives's girlfriend said that she did not write that note and that Ives kept his things inside that crockpot.

At trial, the government offered no direct evidence that Ives knew that the package contained a controlled substance, but the government's expert on drug trafficking testified

---

[2] Appx. 50–51.

that drug couriers "typically know the contents [of the packages] . . . . [b]ecause they're responsible for it."[3]

After both parties had rested their cases, Ives moved for a judgment of acquittal. This motion was denied. He was found guilty and sentenced to sixty months' incarceration. He appeals.

## II.[4]

We give plenary review to the denial of a motion for judgment of acquittal.[5] We apply the same sufficiency of the evidence standard as the District Court, independently "review[ing] the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt" based on the available evidence.[6] We must take care "not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury."[7] In doing so, "we review the evidence as a whole, not in isolation, and ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt."[8] When viewed in a light most favorable to the government, we must affirm a

---

[3] Appx. 236–37.
[4] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.
[5] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424 (3d Cir. 2013) (en banc).
[6] *Id.* at 430 (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)) (second alteration in original).
[7] *Id.* (quoting *Brodie*, 403 F.3d at 133) (alteration in original).
[8] *Id.* (quoting *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)).

4

district court's denial of a motion for acquittal if there is substantial evidence to uphold the jury's verdict.[9]

Under 21 U.S.C. §§ 841(a), 846, the government must prove that the defendant attempted to possess a controlled substance and did so knowingly or intentionally.[10] Ives argues that there is insufficient evidence to support a finding that he knew the package contained a controlled substance. We disagree.

Despite no direct evidence, there is ample circumstantial evidence that Ives knew the package contained a controlled substance. Viewing this circumstantial evidence as a whole and drawing all reasonable inferences in favor of the government, we conclude there is substantial evidence to uphold the jury's finding that Ives knew the package contained a controlled substance and, specifically, that he knew which controlled substance it was. There was enough evidence for the jury to conclude that Ives was not being left in the dark about the details.

As the government put it, the evidence painted a "vivid picture" of Ives helping his cousin by knowingly receiving a package containing a controlled substance. Given their familial relationship and how often they spoke, it is reasonable to infer that Ives knew Carey dealt controlled substances. Ives and Carey called each other about six times more in the *week* after the failed delivery than in the entire previous *month*. This, coupled with the text messages coordinating retrieval of the package by "the 29th," suggests both men

---

[9] *Id.*

[10] 21 U.S.C. §§ 841(a), 846; Third Circuit Model Jury Instructions § 6.21.841A.

were quite concerned about retrieving the package.[11]  The extent to which they communicated about their plan to retrieve the package creates a reasonable inference that they knew the stakes for this were high.  Thus, it is reasonable to infer that Ives knew the package contained drugs.

In addition, the use of a fake name and fake return address, which are typical methods when mailing controlled substances, further suggests that Ives was aware the package contained a controlled substance.  This conclusion is supported by the note about receipt of a package under the name Melrose Paul found among his personal belongings, which suggests he knew to look out for this particular package, even though it was not addressed to him.

Moreover, that Ives used countersurveillance upon arrival and then tried to flee when he saw officers moving in also suggests he knew the package contained something illegal.  Given that Ives likely knew that Cary dealt drugs and the text messages make clear that Carey had some connection to the package, it is reasonable to conclude that Ives knew the package specifically contained a controlled substance.  These inferences, along with the government expert's testimony that drug couriers typically know the contents of the packages they deliver, further support this finding.  We conclude that there is sufficient evidence to uphold the jury's verdict.  We cannot usurp the role of the jury by weighing the credibility of and assigning weight to the evidence.  Ives's motion for acquittal was properly denied.

---

[11] Appx. 198.

**III.**

Viewed in the light most favorable to the prosecution, there is sufficient evidence to support the guilty verdict. We will therefore affirm the judgment of conviction of the District Court.